Argued and submitted December 7, 2010, affirmed January 25, 2012

John ALTO
and Dorothy Alto,
*Petitioners-Appellants,*

*v.*

CITY OF CANNON BEACH,
*Respondent-Respondent,*

*and*

George A. LARSEN
and Alexis Larsen,
Trustees of the George and Alexis Larsen
Living Trust dated April 23, 1996,
*Intervenors-Respondents-Respondents.*

Clatsop County Circuit Court
082665; A142171

270 P3d 392

Paul Hribernick argued the cause for appellants. With him on the briefs were Caroline E.K. MacLaren and Black Helterline LLP.

Thomas W. Sondag argued the cause for respondents. With him on the joint brief were Shawn M. Lindsay and Lane Powell PC, and Tamara A. Herdener.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioners appeal a judgment dismissing their writ of review proceeding concerning respondent City of Cannon Beach's decision that, pursuant to section 5(3) of Ballot Measure 49 (2007), respondents George and Alexis Larsen (the Larsens) have a vested right to complete and continue the development of the use described in their Ballot Measure 37 (2004) waiver.[1] For the reasons set forth below, we conclude that, because petitioners have failed to establish statutory standing under ORS 195.318—a statute establishing the requisites for challenging, by writ of review, a local government's vesting determination under Measure 49—the writ of review court lacked subject matter jurisdiction. Accordingly, we affirm.

The material facts for purposes of our review are procedural or uncontested. The Larsens own a duplex in the city. In March 2006, they obtained a Measure 37 waiver from the city to develop their property consistently with the land use regulations that were in effect in 1974 when they acquired the property.[2] Several months later, the Larsens applied for a variance to expand their existing duplex, and, in December 2006 and March 2007, petitioner Dorothy Alto testified in opposition to the variance at hearings before the planning commission and city council. The planning commission denied the Larsens' application for a variance, and the city counsel upheld that denial.

---

[1] As context, Measure 37 provided, generally, that public entities that enacted or enforced land use regulations that adversely affected the fair market value of a claimant's property either had to pay just compensation or waive the offending regulations. In 2007, the voters passed Measure 49, which "retroactively extinguished previously issued Measure 37 waivers of land use regulations" but permitted "a landowner who had obtained a Measure 37 waiver to complete and continue the use described in the waiver, provided that the landowner could also demonstrate a common law vested right to complete that use." *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 224-25, 264 P3d 1265 (2011) (internal quotation marks omitted).

[2] The Larsens also requested a Measure 37 waiver from the State of Oregon. That request was denied because "the Department of Land Conservation and Development (the department) * * * determined that the claim is not valid because neither the Land Conservation and Development Commission * * * nor the department has enforced laws that restrict [the Larsens'] use of the private real property."

Thereafter, in July 2007, the Larsens submitted plans to modify and expand their structure so that it would qualify as a single-family dwelling under the regulations that existed in 1974. The city returned the plans because they did not comply with a city easement on the Larsens' property. In August 2007, petitioners' attorney submitted a letter to the city on their behalf "urg[ing] the City to retain whatever rights it has to that easement now and in the future." Ultimately, the easement issues were resolved, and, on December 7, 2007—the day after Measure 49 became effective—the city received a letter from the Larsens' architect requesting a building permit for the expansion pursuant to the Larsens' Measure 37 waiver.

In response, the city tentatively determined that the Larsens were not entitled to relief under Measure 49 for two reasons. First, the city reasoned that the Larsens were not entitled to relief under section 9 of Measure 49 "because [their] approved claim did not involve the subdivision or partition of land for one or more single-family dwellings, or the establishment of one or more single-family dwellings on land on which dwellings would not otherwise be allowed." Second, the city reasoned that, pursuant to section 5(3) of Measure 49,[3] the Larsens "do not have a vested right as of December 6, 2007, to complete the use described in [their] approved claim for compensation and therefore the City is unable to issue the requested building permit."

The Larsens disagreed with the city's tentative determination under section 5(3). Specifically, the Larsens asserted that they "are entitled to just compensation pursuant to [section] 5(3) because their Measure 37 claim was approved March 7, 2006, prior to the effective date of Measure 49, and because * * * their property rights had vested prior to December 6, 2007."

---

[3] As pertinent to this case, the Larsens, who had filed their Measure 37 claim before June 28, 2007, have an entitlement, under section 5(3) of Measure 49, to just compensation as provided in

"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

On February 8, 2008, the city sent notices to neighboring property owners—including petitioners—that "[a] hearing [had been] scheduled before the City Council on March 4, 2008[,] at 7:00 p.m. to consider whether or not [the Larsens] are entitled to compensation pursuant to the provision of Measure 49." The city sent petitioners' notice to the same address that it had used to correspond with petitioners for 13 years—which is the address to which petitioners' tax assessments are sent—and the notice was not returned to the city. Nonetheless, petitioners did not receive the city's notice.

On March 4, the city council continued the hearing to its April meeting. Thereafter, on April 1, the city held a public hearing on the Larsens' Measure 49 claim but continued the hearing again to June 3, at which point the city council closed the public hearing and tentatively determined that, subject to final findings of fact, the Larsens did have a vested right pursuant to section 5(3) of Measure 49 to complete and continue the use described in their Measure 37 waiver. Petitioners did not appear before the city council on April 1 or June 3 and did not submit written evidence, arguments, or comments concerning the Larsens' Measure 49 claim.

After the June 3 meeting, petitioners learned about the hearing concerning the Larsens' Measure 49 claim. Petitioner John Alto attended the next city council meeting on July 1 and was prepared to testify in opposition to the Larsens' Measure 49 claim; however, when the city decided not to reopen the public hearing to take additional testimony, he was not able to testify at that meeting.

Ultimately, at that July 1 meeting, the city approved the Larsens' Measure 49 claim. Specifically, the city determined that, pursuant to section 5(3) of Measure 49, the Larsens "have a common law vested right to complete and continue the development of their proposed improvement on the Property."

Petitioners timely appealed the city's decision to the Land Use Board of Appeals (LUBA). On respondents' motion to dismiss,[4] LUBA concluded that the "challenged decision is

---

[4] Throughout the remainder of this opinion, the term "respondents" refers to both the city and the Larsens.

clearly a Measure 49 vested rights determination" and that "challenges to such vested rights determinations are not subject to LUBA's jurisdiction."[5] *Alto v. City of Cannon Beach*, 57 Or LUBA 739, 742 (2008). Rather than dismissing the appeal, however, LUBA granted petitioners' motion to transfer the appeal to the circuit court.[6] *Id.* Accordingly, LUBA transferred petitioners' notice of intent to appeal to the circuit court, where it was treated as a petition for a writ of review.[7] *Id.*

As an initial matter, before the circuit court (*i.e.*, writ of review court), respondents moved to dismiss the writ of review because the court lacked subject matter jurisdiction and because petitioners had failed to state a claim for relief under ORS 34.040.[8] Specifically, with regard to the motion to dismiss for lack of jurisdiction, respondents contended that petitioners could not establish statutory standing and, as a consequence, the court lacked subject matter jurisdiction.

---

[5] *See* ORS 195.305(7) (providing that "[a] decision by a public entity that an owner qualifies for just compensation under * * * sections 5 to 11, chapter 424, Oregon Laws 2007, * * * [is] not [a] land use decision[ ]"); ORS 195.318(1) (providing, in part, that "[a] determination by a public entity under * * * sections 5 to 11, chapter 424, Oregon Laws 2007, * * * is not a land use decision").

[6] *See* OAR 661-010-0075(11) ("Any party may request, pursuant to ORS 34.102, that an appeal be transferred to the circuit court of the county in which the appealed decision was made, in the event the Board determines the appealed decision is not reviewable as a land use decision or limited land use decision as defined in ORS 197.015(10) or (12).").

[7] *See* ORS 34.102(4) (providing, in part, that "[a] notice of intent to appeal filed with the Land Use Board of Appeals pursuant to ORS 197.830 and requesting review of a decision of a municipal corporation made in the transaction of municipal corporation business that is not reviewable as a land use decision or limited land use decision as defined in ORS 197.015 shall be transferred to the circuit court and treated as a petition for writ of review").

[8] ORS 34.040(1) provides:

"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a) Exceeded its jurisdiction;

"(b) Failed to follow the procedure applicable to the matter before it;

"(c) Made a finding or order not supported by substantial evidence in the whole record;

"(d) Improperly construed the applicable law; or

"(e) Rendered a decision that is unconstitutional."

Respondents' jurisdictional contentions were predicated on ORS 34.020—the statute governing statutory standing to challenge a decision by writ of review—as construed in *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979) (*Strawberry Hill*). In that regard, ORS 34.020 provides that, except under circumstances that are inapplicable here, "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, [the statutes governing writs of review,] and not otherwise." In *Strawberry Hill*, the Supreme Court explained that, to establish statutory standing,

"a plaintiff seeking relief against a [lower tribunal] must show (1) that he suffered an identifiable injury to an interest of some substance, and (2) either that he participated in some form in the proceeding before the [lower tribunal] or that he was entitled to participate but failed to do so for lack of proper notice or other reasons beyond his control."

287 Or at 611.

Applying those principles, respondents contended that petitioners lacked statutory standing. Specifically, respondents posited that, because petitioners "failed to participate in the vested rights determination proceedings before the City Council of Cannon Beach, they cannot establish statutory standing and, pursuant to ORS 34.020, cannot pursue a petition for writ of review."

Petitioners remonstrated that they established statutory standing. Petitioners contended that, as required by ORS 34.020, they "participated and appeared in the 'process or proceeding' through their testimony on the variance application and the easement modification request." (Boldface omitted.) According to petitioners, such participation was sufficient to demonstrate participation in the Measure 49 vested rights proceeding because the variance and easement proceedings "were necessary predicates to the contested [vested rights] decision." Alternatively, petitioners contended that their participation in the vested rights proceeding was excused due to "lack of proper notice" as described in

*Strawberry Hill.* 287 Or at 611. Specifically, petitioners contended that (1) "as neighboring property owners, [they] were entitled to notice and could not participate in the final proceedings that led to the contested [vested rights] decision only because they did not receive notice" and (2) "the notice that the City did provide to other neighboring property owners was improper in that it failed to comply with applicable statutes[.]"

Ultimately, although its reason for doing so is somewhat unclear from its letter opinion, the writ of review court granted respondents' motion to dismiss and denied petitioners' request for reconsideration. Petitioners appeal from the court's resulting judgment.

On appeal, the parties raise competing contentions about the basis of the court's dismissal—that is, whether the court dismissed the writ of review because petitioners lacked statutory standing or because they had failed to state a claim. For their part, petitioners contend that the court correctly determined that they had statutory standing but erred in dismissing the writ on the ground that it failed to state a claim. Conversely, respondents contend that the court properly dismissed the writ because petitioners lack statutory standing.

We need not resolve that dispute regarding the basis of the court's dismissal. That is so because we have an independent obligation to consider jurisdictional issues—including whether petitioners have statutory standing to challenge the city's vested rights decision by writ of review—even where the parties have neglected to do so or have failed to fully explore the issue. *See Dodds v. City of West Linn*, 222 Or App 129, 133, 193 P3d 24 (2008) (reasoning that whether a person has statutory standing to challenge a decision by writ of review is a matter that is "subject matter jurisdictional in nature" and "we have an obligation to address [it], even if the parties neglected to do so").

Here, although the parties' arguments before the writ of review court focused on the general standing requirements of ORS 34.020, a more specific statute that was enacted as part of Measure 49—that is, ORS 195.318—governs standing to seek review of a Measure 49 vesting determination. That statute provides, in part:

"(1)    A person that is adversely affected by *a final determination* of a public entity under * * * sections 5 to 11, chapter 424, Oregon Laws 2007, * * * may obtain judicial review of *that determination* under ORS 34.010 to 34.100, if the determination is made by Metro, a city or a county * * *[.] * * *

"(2)    A person is adversely affected under subsection (1) of this section if the person:

"(a)    Is an owner of the property that is the subject of *the final determination*; or

"(b)    Is a person who timely submitted written evidence, arguments or comments to a public entity concerning *the determination*."

(Emphasis added.) As pertinent to this case, we glean a single, salient principle from the unambiguous text of ORS 195.318: The legislature intended that a person has statutory standing to challenge a local government's vesting determination under section 5(3) of Measure 49 if the person is either (1) the owner of the property that is the subject of that vesting determination or (2) the person timely submitted written evidence, arguments, or comments to a public entity concerning the vesting determination.

Applying that principle here, we conclude that petitioners lack statutory standing to challenge the city's vesting determination by writ of review. It is undisputed that petitioners are not the owners of the property subject to the vesting determination. Further, although petitioners were involved in earlier proceedings concerning a variance and easement issues, it is undisputed that they did not participate in the Measure 49 vesting proceeding.

However, petitioners contend that their participation should be excused under the rationale in *Strawberry Hill* because the city did not provide proper notice pursuant to section 10(1) of Measure 49. The nature of the alleged deficiencies in the notice is immaterial. Suffice it to say, by its terms, section 10(1) does not apply to vesting determinations under section 5(3).

Specifically, section 10(1) provides, in part:

> "The public entity shall provide written notice to the claimant, the Department of Land Conservation and Development and any other person entitled to notice of the *tentative determination as to whether the claimant qualifies for relief under section 9 of this 2007 Act* and, if so, the specific number of single-family dwellings that the public entity proposes to authorize. The notice must state that the recipient has 15 days to submit evidence or arguments in response to the tentative determination, after which the public entity shall make a final determination."

(Emphasis added.) In other words, the notice requirements of section 10(1) apply to determinations concerning relief under section 9 of Measure 49. Here, however, the decision that is the subject of the writ of review proceeding in this case is a vested rights determination under section 5(3) of Measure 49. Thus, the notice requirements of section 10(1) simply do not apply.

Nevertheless, we note that the city provided notice concerning the vested rights proceeding to the neighboring property owners, including petitioners. Although petitioners did not receive that notice, petitioners do not refer us to any provision of Measure 49 or any other statute or local regulation that requires the city to ensure that the notices that it sends are actually received. *Cf.* ORS 197.763(8) ("The failure of the property owner to receive notice as provided in this section shall not invalidate such proceedings if the local government can demonstrate by affidavit that such notice was given."). Thus, because petitioners did not submit "written evidence, arguments or comments," ORS 195.318(2)(b), to the city concerning the vested rights determination pursuant to section 5(3) of Measure 49, they lacked statutory standing to challenge that decision by writ of review, ORS 195.318(1).

Affirmed.