No. 686          December 28, 2023          789

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

INDOOR BILLBOARD / NORTHWEST, INC.,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

THELAUNDRYLIST.COM, INC.,
a California corporation,
*Defendant,*

*and*

SUPREME LINEN SERVICES, INC.,
a Florida corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CV22976; A177281

Leslie G. Bottomly, Judge.

Argued and submitted February 22, 2023.

Allison Leonard argued the cause for appellant. Also on the opening brief were Damian & Valori LLP; and Jeanne Sinnott and Wildwood Law Group LLC. On the reply brief were Allison Leonard and Wildwood Law Group LLC.

Dean Alterman argued the cause and filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Reversed and remanded.

## JACQUOT, J.

Defendant Supreme Linen Services, Inc., a Florida corporation, appeals an order denying its motion under ORCP 71 B to set aside a default judgment against it obtained by plaintiff Indoor Billboard/Northwest, Inc. On appeal, defendant contends that the trial court erred in determining that the facts did not demonstrate excusable neglect. We reject that argument without further discussion. Defendant also asserts that the court erred by failing to set aside the default judgment as void for lack of personal jurisdiction. The trial court concluded that it had personal jurisdiction over defendant based on ORCP 4 D. We agree with defendant that the requirements of ORCP 4 D were not satisfied.[1] Before the trial court, the parties disputed whether the court had personal jurisdiction under additional subsections of ORCP 4, and they reiterate some of those arguments on appeal, but we do not reach those additional issues, because the trial court did not make any findings on the disputed issues of fact. *See Sherertz v. Brownstein Rask*, 314 Or App 331, 341, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022) (we address an alternative basis for affirmance if it is "properly presented again on appeal and raises a question of law," whereas we remand if the trial court must make additional factual findings). Accordingly, we reverse and remand for the trial court to find the facts and evaluate the parties' contentions about other subsections of ORCP 4.

A default judgment that is void for lack of personal jurisdiction must be set aside. *Nelson v. American Home Mortgage Servicing, Inc.*, 249 Or App 555, 558, 278 P3d 89 (2012). To determine whether an Oregon court can exercise personal jurisdiction over a defendant, both the trial and the appellate courts look to the pleadings and the affidavits of both parties. *Munson v. Valley Energy Investment Fund*, 264 Or App 679, 700, 333 P3d 1102 (2014). Initially, the "[p]laintiff bears the burden of alleging and proving the facts necessary to establish jurisdiction." *Wallace v. Holden*, 297 Or App 824, 826, 445 P3d 914, *rev den*, 365 Or 557 (2019).

---

[1] Defendant further contends that the court's ruling failed to comply with due process; however, in light of our conclusion that the allegations and evidence do not establish that either ORCP 4 D(1) or (2) was satisfied, we need not reach defendant's due process arguments.

That remains true when a defendant moves to set aside a default judgment as void for lack of personal jurisdiction. *Horn and Horn*, 97 Or App 177, 180, 775 P2d 338, *rev den*, 308 Or 465 (1989).

"We review the trial court's factual findings to determine whether they are supported by any competent evidence, and, where the trial court failed to make express factual findings, we assume that the court found the relevant facts in a manner consistent with its ultimate ruling." *Munson*, 264 Or App at 700-01 (internal quotation marks omitted). Our assumption that the court made implicit findings of fact has two exceptions. First, it does not apply when an implicit factual finding is not necessary to the court's ultimate conclusion. *Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015); *see also State v. Lunacolorado*, 238 Or App 691, 696, 243 P3d 125 (2010), *rev den*, 350 Or 530 (2011) (appellate court may infer a finding of fact "only where we can deduce that the trial court's chain of reasoning must necessarily have included that fact as one of its links"). Second, we defer to a court's implicit factual findings only to the extent that they are supported by the evidence in the record. *Pereida-Alba*, 356 Or at 671.

In this case, the trial court made few express findings of fact; thus, for the most part, our task is to ascertain what implicit findings were necessary to its analysis and defer to them to the extent that they are supported by evidence. We begin by summarizing the basic facts consistently with the trial court's few explicit findings. We provide additional facts about defendant's relationship with codefendant TheLaundryList.Com, Inc. (Laundry List) further below.

The dispute underlying this litigation arose from plaintiff's purchase of an industrial washing machine that previously belonged to defendant. Laundry List, a seller and broker of industrial laundry equipment, sent plaintiff an email advertising several industrial washing machines for sale. Plaintiff expressed interest in one of the washers, and, in response, Laundry List sent plaintiff a photograph of a meter reading on an industrial washer. At the time, the washer was located at defendant's facility in Florida, and plaintiff sent an agent there. Defendant's agent showed

plaintiff's agent a washer with the same meter reading as the one in the photograph Laundry List had sent.[2] That is the only direct interaction that took place between defendant and plaintiff.

Laundry List sent plaintiff an invoice for a washer, and plaintiff paid Laundry List for the washer and for shipping to Oregon. Laundry List arranged for shipping and sent a truck to defendant's warehouse in Florida, where defendant loaded several pieces of equipment, including the washer that was later delivered to plaintiff, onto the truck. About a week later, the same truck delivered a washer to plaintiff in Oregon. The washer plaintiff received was different from the one whose meter reading plaintiff had seen in the photograph and that its agent had seen at defendant's facility in Florida.

Plaintiff soon filed this action against defendant and Laundry List for recission of contract and fraud. In the complaint, plaintiff alleged that both defendant and Laundry List sold the washer to plaintiff. Defendant did not respond, and plaintiff obtained a default judgment against it.[3] Five months later, defendant filed the motion at issue here, in which it contended that, pursuant to ORCP 71 B, the court must set aside the default judgment on the ground that it is void for lack of personal jurisdiction.

One of the bases on which plaintiff asserted there was personal jurisdiction was ORCP 4 D, which allows for jurisdiction over a properly served defendant "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant," so long as, at the time the alleged injury occurred, the defendant either carried on "[s]olicitation or service activities * * * within this state," ORCP 4 D(1), or "[p]roducts, materials, or things distributed, processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade," ORCP 4 D(2). The trial court determined that it had personal jurisdiction

---

[2] The pleadings and record do not reveal anything more about the interaction between defendant and plaintiff's agent. For example, it is unknown how plaintiff's agent identified himself to defendant's agent.

[3] Laundry List did eventually respond. Laundry List and plaintiff have resolved their dispute. Laundry List is not a party to this appeal.

under ORCP 4 D, finding that plaintiff had been injured—by receiving a different washer than the one for which it had contracted—in Oregon, by an act—defendant's act of showing a washer to plaintiff's agent—that took place in Florida. However, the court did not specify, and we cannot tell, whether, in reaching the conclusion that it had personal jurisdiction under ORCP 4 D, it found the additional conduct required by ORCP 4 D(1) or the additional conduct required by ORCP 4 D(2).

At the outset, we note that, as demonstrated by the facts set out above, plaintiff has not alleged or proved facts demonstrating that defendant itself carried out solicitation or service activities in Oregon, as required by ORCP 4 D(1), or that "[p]roducts, materials, or things distributed, processed, serviced, or manufactured" by defendant itself "were used or consumed" in Oregon "in the ordinary course of trade," as required by ORCP 4 D(2).[4] As defendant's own conduct did not qualify under either subsection, for the court to exercise jurisdiction over defendant under either prong of ORCP 4 D, the court necessarily, though implicitly, found that Laundry List was acting on defendant's behalf in the course of the transaction at issue. However, as explained below, the evidence in the record does not support a finding that Laundry List was acting for defendant, *i.e.*, that it was defendant's agent.

In its complaint, plaintiff alleged that both defendant and Laundry List sold the washer. Plaintiff did not allege any relationship between Laundry List and defendant or allege that Laundry List was acting on defendant's behalf. The complaint described Laundry List as being "in the business of brokering the sale of used industrial laundry equipment * * * and is by its own description 'the #1 seller of used industrial laundry machinery in the North America.'" Laundry List admitted to that description in its answer.

_____

[4] As recounted above, the pleadings and evidence indicate that defendant took only two direct actions in the transaction. First, defendant showed plaintiff's agent a washer; that conduct took place in Florida, not Oregon. Second, defendant loaded equipment onto a truck provided by Laundry List; to the extent that that conduct could be considered "distribution" of the equipment (a question that we need not, and do not, consider), it was not alleged or shown to be part of defendant's ordinary course of trade.

Neither plaintiff nor Laundry List provided any documentation indicating that defendant had requested or allowed Laundry List to act on defendant's behalf. In its arguments below regarding jurisdiction, plaintiff did not contend that Laundry List acted as a broker in this specific transaction, but rather stated that "Laundry List *traditionally* acts as a broker for parties such as [defendant]." (Emphasis added.) That assertion was not backed by evidence of any agreement between Laundry List and defendant, and no party submitted evidence that Laundry List serves only as a broker. Plaintiff's president stated in a declaration that plaintiff was "unaware of any agreement, if one exists, between TheLaundryList.Com and Supreme Linen for TheLaundryList.Com's services as a broker."

Defendant's president averred in a declaration that at no time did defendant engage Laundry List as a broker and no agreement to such a relationship existed. He further asserted that defendant never consented to Laundry List advertising the washer for sale prior to Laundry List's purchase of the washer from defendant. Defendant submitted two invoices between itself and Laundry List, from around the same time as Laundry List's invoice to plaintiff, showing that defendant transferred four machines to Laundry List. Neither invoice contained any brokerage or consignment terms, neither invoice made any reference whatsoever to plaintiff as a party to either transaction, and there is no evidence of defendant sending any invoices to anyone other than Laundry List or collecting any money from plaintiff.[5]

No other documentation in the record indicates that Laundry List was acting on behalf of defendant, or anyone else, in either this transaction or any other transaction. Despite plaintiff's assertion that Laundry List "traditionally" acts as a broker, none of the parties, including Laundry List, ever indicated that Laundry List acted *only* as a broker

_____

[5] We note that each of the two invoices includes a machine with the same serial number—that is, either one washer was transferred from Supreme Linen to Laundry List twice, or the serial number for one of the transferred machines was never included on an invoice. The serial number listed on the invoice between plaintiff and Laundry List does not appear on the invoices between Supreme Linen and Laundry List. However, neither of the parties addressed the significance of those facts at any point in the litigation below or on appeal. The record also does not reflect the serial number of the washer that plaintiff received.

or agent for sellers—that is, that it did not buy and resell laundry equipment on its own behalf—and none of the parties submitted evidence that Laundry List was acting as a broker in this specific transaction.

In sum, the evidence in the record as to Laundry List's participation in the transaction, viewed in the light most favorable to plaintiff, is consistent with two possibilities: first, Laundry List was acting as a broker for defendant when it solicited the sale, sold the washer to plaintiff, and arranged for the washer's delivery in Oregon; or, second, Laundry List was acting on its own behalf by buying the washer from defendant, soliciting the sale to plaintiff, actually selling the washer to plaintiff, and arranging for the washer's delivery in Oregon.

There is nothing allowing a nonspeculative inference that Laundry List was actually acting on behalf of defendant. There was no direct evidence of that, like an agreement between defendant and Laundry List; defendant denied that there was such an agreement, and plaintiff declared that it did not know of one. Plaintiff's assertion that Laundry List "traditionally" acts as a broker does not answer the question whether, in this case, Laundry List was acting as a broker. Moreover, the facts about the transaction itself do not support that inference, because nothing about them makes it more likely that Laundry List was acting on behalf of defendant than that Laundry List was acting on its own behalf. Thus, the court's implicit finding that Laundry List was acting on behalf of defendant was not supported by the evidence. *See State v. Bivins*, 191 Or App 460, 468, 83 P3d 379 (2004) (noting that evidence is "insufficient to support an inference when the conclusion to be drawn from it requires too great an inferential leap—that is, when the logic is too strained" (internal quotation marks omitted)).

Thus, the court erred in denying the motion to set aside the judgment on the ground that it had personal jurisdiction under ORCP 4 D. Accordingly, we reverse and remand. On remand, the trial court can address the parties' contentions as to whether the court has personal jurisdiction over defendant based on other subsections of ORCP 4.

Reversed and remanded.